**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **LYNN ARNIERI,** ) | Case No.  1:11 CV 1897 |
| ) | |
| Plaintiff, ) | Judge Dan Aaron Polster |
| ) | |
| vs. ) | **MEMORANDUM OF OPINION** |
| ) | **AND ORDER** |
| **THOMAS M. CORNHOFF, et al.,** ) | |
| ) | |
| Defendants. ) | |

Before the Court are two motions:

(1) Defendant The Sherwin-Williams Company's Motion for Summary Judgment ("Motion" or "Summary Judgment Motion") (**Doc #: 30**), and

(2) Defendant The Sherwin-Williams Company's Request for Oral Argument.  (**Doc #: 38**).

For the following reasons, the Summary Judgment Motion is **GRANTED**.  Since the Court is able to resolve the Motion based on the record, the Request for Oral Argument is **DENIED**.

**I.**

On April 22, 2009, Defendant Thomas M. Cornhoff, while driving a 2007 Ford Fusion provided by his employer, Defendant Sherwin-Williams, struck a vehicle that was stopped on a ramp to Route 77 at a speed of 20-30 mph.  Plaintiff Lynn Arnieri, an occupant in that vehicle, suffered significant injuries due to the accident.

Based on these allegations, Plaintiff filed a complaint against Cornhoff and Sherwin-Williams.  Count I asserts a negligence claim against Cornhoff for causing the accident and, indirectly, against Sherwin-Williams because the accident allegedly occurred while Cornhoff

was in the scope of his employment. Count II asserts a direct negligence claim against Sherwin-Williams for failing to adequately check Cornhoff's driving record prior to the accident, and for failing to adequately train and monitor his employment-related driving.

On July 17, 2012, Defendants filed the pending Motion, asking the Court to grant summary judgment to Defendant Sherwin-Williams on both counts. As a preliminary matter, it is undisputed that Cornhoff negligently caused the accident. The only question is whether Sherwin-Williams is directly or indirectly liable for the accident as well. With regard to Count I, Sherwin-Williams argues that, although Cornhoff was driving a company vehicle at the time of the accident, Plaintiff cannot show that he was in the scope of his employment when the accident occurred; thus, Sherwin-Williams has no *respondeat superior* liability for Cornhoff's acknowledged negligence. With regard to Count II, Sherwin-Williams contends that, prior to giving Cornhoff a company car, it checked his driving record and confirmed that he had a valid driver's license.

In opposition, Plaintiff argues that Sherwin-Williams is vicariously liable for the accident because it occurred during Sherwin-Williams' business hours while Cornhoff was still performing his job duties as National Accounts Manager for Sherwin-Williams' Krylon Industrial Division. Moreover, Sherwin-Williams is directly liable for negligently entrusting Cornhoff with a company car without sufficiently checking the status of his driving record and failing to adequately train and monitor him.

The Court has reviewed the Motion, the opposition brief (Doc #: 34), the reply brief (Doc #: 36), the sur-reply (Doc #: 37) and the record, and is prepared to issue its ruling.

**II.**

Sherwin-Williams moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must examine the evidence and draw all reasonable inferences in favor of the nonmoving party. *Jones v. Potter*, 488 F.3d 397, 402–03 (6th Cir. 2007). If, after reviewing the record as a whole, a rational factfinder could not find for the nonmoving party, summary judgment is appropriate since there is no genuine issue of material fact for determination at trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**III.**

**A.**

Under the doctrine of *respondeat superior*, an employer may be held vicariously liable for an employee's tort only if the tort was committed within the scope of employment. *See Faber v. Metalweld, Inc.*, 627 N.E.2d 642, 644 (Ohio App. 8th Dist. 1992); *Meehan v. AMN Healthcare, Inc.*, No. C-110442, 2012 WL 473751 (Ohio App. 1st Dist. Feb. 15, 2012); *Osborne v. Lyles*, 63 Ohio St.3d 326 (1992). An employee's conduct is within the scope of his employment if it is of the kind the employee is employed to perform, occurs substantially within the authorized limits of time and space, and is actuated, in part, by a purpose to serve the employer. *Banks v. United States*, Nos. 1:06CV1630, 1:06 CV 2041, 2007 WL 2114653 at *3 (N.D. Ohio Jul. 16, 2007) (citing *Anderson v. Toeppe*, 688 N.E.2d 538, 543 (Ohio App. 6th Dist. Dec. 6, 1996)).

Ohio courts have consistently held that an employee is <u>not</u> within the scope of his employment when he is traveling to or from the office, even when driving in a company vehicle. *See, e.g., Faber*, 627 N.E.2d 642 (employer could not be held liable for employee's negligence while driving to work, even though the accident occurred at the job site); *Banks*, 2007 WL 2114653 (N.D. Ohio Jul. 16, 2007) (an employee who has a fixed and limited place of employment is not, as a matter of law, in the course of his employment when traveling to and from his workplace). In *Kimble v. Pepsi-Cola Gen. Bottlers*, the Ohio appeals court explained,

> [Plaintiffs] would have us believe that because [the employer] required [the employee] to operate the company vehicle, [the employee] was continuously acting within the scope of his employment when operating the car, and that the requirement to use the company vehicle creates an exception to the well-established line of cases holding that mere travel to and from a fixed place of work does not constitute acting within the scope of employment.

658 N.E.2d 1135, 1136 (Ohio App. 1st Dist. May 3, 1995) (citation omitted). In sum, neither the fact that an employer owns the vehicle driven by an employee – nor the fact that the employee drove that vehicle to or from work at the time of the accident – is sufficient <u>in itself</u> to render the employer liable for the employee's torts. Thus, the critical question is whether Cornhoff's use of the vehicle at the time of the accident was actuated by a purpose to serve Sherwin-Williams. *Banks*, 2007 WL 2114653 (N.D. Ohio Jul. 16, 2007).

At deposition, Cornhoff testified that, on the afternoon of April 22, 2009, he was working at his office in Sherwin-Williams' headquarters in downtown Cleveland. (Cornhoff Dep. at 89.) Shortly after 4:00 p.m., he informed his supervisor that he was leaving work early to coach his son's soccer game. (Id.) He left the North Parking Garage on Ontario Avenue with the intention of driving to his son's soccer game in Twinsburg, Ohio via I-77 South. (Id. at 45-46.) As he entered the ramp to I-77 South, the cars in front of him stopped suddenly, and he collided with

the vehicle in which Plaintiff was riding.  After his airbag deployed, he called his wife to tell her about the accident.  Plaintiff's husband (Terry Arnieri) testified at deposition that he went to check on Cornhoff shortly after the accident to check his status, at which time he noticed that Cornhoff was bleeding from his head and knee.  (Doc #: 34-4 ("T. Arnieri Dep."), at 34.)  When Terry Arnieri asked him what happened, Cornhoff said that he was putting on his seat belt when it happened; then, he passed out.  (Id.)

Plaintiff has produced no credible evidence contradicting Cornhoff's testimony that he was on his way to a soccer game or otherwise showing that Cornhoff was in the scope of his employment at the time of the accident.  Rather, she argues that Cornhoff was in the scope of his employment because the accident occurred during Sherwin-Williams' traditional business hours (8:30 a.m. to 5:30 p.m. Eastern Time) in a vehicle leased by Sherwin-Williams.  As the case law shows, however, the allegation that an employee is driving a company car at the time of an accident, or that he is driving to and from work at the time of an accident, is insufficient to show he was in the scope of his employment.

Plaintiff argues that Cornhoff was in the scope of employment at the time of the accident because he testified that he recorded his mileage commuting to and from the office as "work" miles.  That assertion mischaracterizes Cornhoff's testimony and the evidence.  When asked at deposition whether he designated his mileage to and from work as "work" miles or "personal" miles for tax purposes, he responded that he may have designated that mileage as work miles, but he would have to double-check Sherwin-Williams' policy at the time of the accident because he would have done whatever the policy required him to do.  (Cornhoff Dep. at 67.)  A copy of

Sherwin-Williams' policy at the time of the accident clearly states that he was to designate that commuter mileage as "personal."[1] (Doc #: 30-4, at 2.)

Plaintiff argues that Cornhoff was in the scope of his employment at the time of the accident because (1) he was on his Blackberry when the accident occurred, (2) the Blackberry was issued to him by Sherwin-Williams and Sherwin-Williams paid all charges, and (3) Sherwin-Williams required him to be available for calls or emails from customers and co-workers spanning three countries (the U.S., Canada and Mexico) and crossing two time zones (Central Standard Time and Mountain Time) during their business hours. Plaintiff has not cited a single case supporting the position that an employer's requirement that its employee be accessible by a phone that is paid for by the employer necessarily makes that employer vicariously liable for all of that employee's negligent acts. If the evidence showed that Cornhoff was on a business call at the time of the accident, that might possibly support Plaintiff's position that Cornhoff was in the scope of employment when the accident occurred. However, Cornhoff's cell phone records show, and it is undisputed, that the call he made at 4:31 p.m. on the day of the accident was a personal call to his wife.

---

[1] The Sherwin-Williams' policy on how to calculate commuting mileage at the time of the accident provides in pertinent part:
- If an employee travels from home to his or her regular work location as the first trip of the day and/or from their regular work location to home as the last trip of the day, this "commuting" distance is considered personal mileage. For example, if the employee's regular work location is 10 miles from their residence, the total daily personal miles will be 20 miles.
- If an employee travels to his or her regular work location at any time during the business day, even if not the first and/or last trip of the day, there is a personal mileage requirement to and from this regular work location for that day equal to the mileage from home to the regular work location. Similar to the first example, the employee would have 20 total daily personal miles.

(Doc #: 30-4, at 2 (emphasis added).)

Plaintiff challenges the veracity of Cornhoff's testimony because he was equivocal at deposition about whether he was the "coach" or "parent helper" of his son's soccer team and, in a later affidavit, averred that he left his office early to "coach" a soccer game. (Doc #: 37, at 3.) According to Plaintiff,

> If Cornhoff merely misspoke during the course of the deposition that he was not a coach, but a parent helper, the differentiation in the terminology would be insignificant. This lapse could be attributed to nerves or some other interloper of accuracy. However, Cornhoff signed a prepared affidavit stating that he was on his way to "coach" his son's soccer game at the time of the accident involving Lynn Arnieri. His affidavit is simply false.

(Id.) When Plaintiff asked Cornhoff at deposition about whether he was a coach of his son's team on the day of the accident, he responded,

> A. I helped out. I wouldn't consider - - - I was not the head coach.
>
> Q. Were you a coach at all, a head, assistant or any other type of coach?
>
> A. I was a parent helper.
>
> Q. How were you assigned to be a parent helper?
>
> A. I volunteered.
>
> \*   \*   \*
>
> Q. Now, as a parent helper, what do you do at the games?
>
> A. As a parent helper, I would primarily just watch the games.
>
> Q. So you didn't do any active coaching?
>
> A. Not during the games.
>
> Q. So if there is a statement that on April 22, 2009 you left your office early in order to coach a youth soccer game, that would be inaccurate?
>
>   Mr. Mendelsohn:   Objection to form. Misstates his testimony.
>
> Q. Is that right?

>
> A.  No. I mean, I wouldn't call it inaccurate. I was a parent helper. I mean, I helped line them up, but I did not coach the team during the game.
>
> Q.  So what does that statement mean to you, I left my office early in order to coach a youth soccer game?
>
> A.  It means that I went to do the parent helper responsibilities, help everyone get lined up before the games, help the team warm up, and then once the games begins, assist the coach in any way, which generally at six or seven-year-olds soccer games, isn't much. It is more about making sure the kids don't run wild on the bench.

(Cornhoff Dep. at 42-44.) Cornhoff's later affidavit addressed the question of who he was on the Blackberry with at 4:31 p.m. on the day of the accident, the purpose of which was to show he was not on a business call. (See Doc #: 30-5.) That he summed up the affidavit by stating that he was on his way to coach the soccer game when he rear-ended Plaintiff is insufficient to create a material factual issue.

Plaintiff speculates that Cornhoff may have been driving to the airport for work-related travel, rather than a soccer game, at the time of the accident. This is based on Cornhoff's testimony that he didn't usually carry work materials in his car unless he was going to the airport (Cornhoff Dep. at 48) and the observation by Plaintiff's husband following the accident that "there was books in his back seat that indicated that he was working for a paint company" (Doc #: 34-4, at 35). That Cornhoff had work-related books in the backseat of his car at the time of the accident does not contradict his testimony that he was driving to his son's soccer game at the time of the accident, and is insufficient to create a material issue of fact.

Finally, Plaintiff argues that Cornhoff must have been in the scope of employment when he rear-ended Plaintiff's car because there is no evidence showing that he took a half day of personal or vacation time off. But Cornhoff did not testify that he took a half personal or

-8-

vacation day off; he testified that he left work early to attend his son's soccer game.  Again, this is insufficient to raise a genuine, material factual dispute.

Because the undisputed evidence shows that Cornhoff was not in the scope of employment when the accident occurred, Plaintiff is unable to show that Sherwin-Williams is vicariously liable for the accident.  Accordingly, the Court dismisses Count I against Sherwin-Williams.

**B.**

Sherwin-Williams asks the Court to dismiss the negligent entrustment claim against it in Count II.  "In order to prove negligent entrustment, the plaintiff must show 'that the owner of the automobile had knowledge of the driver's incompetence, inexperience or reckless tendency as an operator, or that the owner, in the exercise of ordinary care, should have known thereof from facts and circumstances with which he was acquainted.'"  *Maeder v. Hale*, No. 10CA–9925, 2012 WL 8708, 2012-Ohio-2 ¶ 4 (Ohio App. 9 Dist. Jan. 3, 2012) (quoting *Mt. Nebo Baptist Church v. Cleveland Crafts Co*., 154 Ohio St. 185, 93 N.E. 2d 668, paragraph two of the syllabus (1950)).  An owner's knowledge that the driver does not have a valid driver's license is insufficient evidence of negligent entrustment since an otherwise competent driver may not have a valid driver's license.  *Dowe v. Dawkins*, No. 93AP-860, 1993 WL 531293, at *2 (Ohio App. 10 Dist. Dec. 23, 1993) (citing *Williams v. Bolding*, 6 Ohio App.3d 48, 50, 452 N.E. 2d 1346 (Ohio App. 10 Dist. 1982)).

Plaintiff argues that Cornhoff received the Fleet Operation Policy and Procedures manual issued by Sherwin-Williams well before the accident.  Sherwin-Williams expected Cornhoff to adhere to the policies in the manual.  The manual required Cornhoff to safely operate the 2007

Ford Fusion to reduce the risk of an accident, and to have a valid driver's license in the state where the Fusion was registered.  The Fusion was registered in the State of Ohio when Sherwin-Williams assigned the vehicle to Cornhoff and at the time of the accident.  Although Cornhoff moved from Pennsylvania to Ohio in October of 2007, he was still using his Pennsylvania driver's license.  Cornhoff could not acquire an Ohio license due to an outstanding speeding ticket he received in North Carolina in August 2008 for traveling 70 mph in a 55 mph zone.  He also received traffic citations in 2001 and 2002 when he was residing in Ohio.  Finally, he struck a parked car in the winter of 2002-2003.  Although the manual required Cornhoff to report his involvement in accidents or traffic citations to Sherwin-Williams, he never reported these incidents to Sherwin-Williams.

Sherwin-Williams asserts that in February 2007, when Cornhoff held the position of Northeast Regional Manager, he was given a 2007 Ford Fusion as part of his compensation.  Before giving Cornhoff the car, Sherwin-Williams checked Cornhoff's driving record and verified that he had a valid driver's license.  (See Doc ##: 30-2 and 30-3.)  Plaintiff does not dispute this fact.  Both parties agree that, even if Cornhoff did not have a valid driver's license at the time of the accident, that fact alone is insufficient as a matter of law to prove negligent entrustment.  (See Doc #: 34, at 11 (citing *Mt. Nebo*, 154 Ohio St. 185) and Doc #: 36 (citing *Dowe*, 1993 WL 531293, at *2).)  Rather, Plaintiff must show that Cornhoff was incompetent, inexperienced, or had reckless driving tendencies, and that Sherwin-Williams knew or should have known about this.

Plaintiff has failed to cite a single case providing any authority that the entrustment of a vehicle to someone with Cornhoff's driving history constitutes negligence.  *See, e.g., Cincinnati*

-10-

*Ins. Co. v. Watson*, No. 88AP-898, 1989 WL 18172 (Ohio App. 10 Dist. Mar. 2, 1989) (affirming summary judgment for father who entrusted his vehicle to his 17 year-old son who, in a two-year period, received a citation for operating vehicle without a license and driving the car off the road at the age of 15, received two speeding tickets and a DUI, spent 3 days in jail, and had his license suspended); *Maeder*, 2012 WL 8708 (affirming summary judgment to woman who entrusted her vehicle to her granddaughter's boyfriend despite him having two successive speeding tickets, a poor driving record, and a suspended license); *Dowe*, 1993 WL 531293 (affirming summary judgment to mother who entrusted her vehicle to daughter who was involved in a prior car accident, had a history of underage drinking, and had a previous license suspension). The record in this case shows that, prior to the April 2009 accident, Cornhoff had a speeding ticket in 2008 for driving 70 mph in a 55 mph zone and two other moving traffic violations in 2001 and 2002. Cornhoff testified, and it is undisputed, that the accident in 2003 occurred when he was leaving his home to go to work in an ice storm, and he slid into a parked car no more than 500 feet outside his driveway. For someone who was 31 years old at the time of the April 2009 accident, this is simply not the record of an inexperienced, incompetent or reckless driver sufficient to support a negligent entrustment claim.

In any event, Plaintiff concedes that Sherwin-Williams had numerous policies to ensure that employees operated vehicles in a safe manner. According to Plaintiff, Sherwin-Williams' operating manual mandated that Cornhoff safely operate the 2007 Ford Fusion at all times; possess a valid driver's license; and report his moving traffic violations and involvement in car accidents to Sherwin-Williams. Plaintiff's arguments imply that any lack of knowledge by

-11-

Sherwin-Williams regarding Cornhoff's alleged reckless driving record resulted from Cornhoff's failure to report his tickets and accident to Sherwin-Williams in compliance with its policies.

Finally, Plaintiff's allegation that Sherwin-Williams is directly negligent for the accident because it <u>encouraged</u> Cornhoff to use his Blackberry while driving is spurious and has no evidentiary support in the record. Accordingly, the Court dismisses the negligent entrustment claim asserted in Count II.

### IV.

Based on the foregoing, the Court **GRANTS** Defendant The Sherwin-Williams Company's Motion for Summary Judgment (**Doc #: 30**). Since the Court is able to resolve the summary judgment motion based on the record, the Sherwin-Williams' Request for Oral Argument (**Doc #: 38**) is hereby **DENIED**. The only remaining claim in this case is the negligence claim asserted against Cornhoff in Count I.

**IT IS SO ORDERED.**

*/s/ Dan A. Polster     October 26, 2012*
**Dan Aaron Polster**
**United States District Judge**